**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**Yingying Dai and Carole Luk,**                          Case No.: 1:18-cv-05170

              **Plaintiffs,**

      -against-                                             **DEFENDANTS' POST TRIAL**
                                                                                                   **BRIEF**

**ABNS NY INC., d/b/a Carvel, SHK LI INC.,**
**d/b/a Carvel and Ka Shek Tam,**

              **Defendants.**

-------------------------------------------------------------------x

## PRELIMINARY STATEMENT

Plaintiffs, Yingying Dai (hereafter referred to as "Dai") and Carole Luk (hereafter referred to as "Luk"), brought this action alleging wage and hour violations of the Fair Labor Standards Act and the New York State Labor Law, including the failure to pay a minimum wage, failure to pay overtime, failure to pay spread of hours and failure to provide documentation. Unfortunately for them, the evidence they presented at trial was inconsistent with the allegations in their Complaint and failed sustain any of the allegations alleged. As discussed more fully below, plaintiff Luk stated that she had no idea how much money she made, taking her salary and sticking in her pocket without counting it (Transcript Page 41, Lines 13-17 and 18-24). Plaintiff Luk cannot prove the minimum wage, overtime or "spread of hours" claims if she cannot testify regarding the amount of money she made. Plaintiff Dai testified that she made substantially more than the minimum wage and never worked more than 10 hours in a day, five days a week. Neither plaintiff offered credible evidence regarding the yearly intake of either store, testifying to various amounts throughout the trial transcript, whereas the defendant's testimony regarding income was consistent and corroborated by the tax returns, the amount of

product he purchased from the Carvel Corporation and the amount for which he sold each of the stores. The inflated range of income numbers provided by both plaintiffs substantiate the defendant's position that the businesses did not come under the jurisdiction of the Fair Labor Standards Act. Even using the maximum numbers provided by the plaintiffs, the combined income of both stores is barley over $500,000.00. As discussed more fully below, even the low range of income numbers provided by plaintiffs is inflated. As such, this Court should issue a verdict in favor of the defendants.

## FACTS

Defendants will assume the Court's familiarity with the facts having reviewed the parties' previous submissions and having presided over the trial.

## ARGUMENT

### A. Defendant Corporations are Not Enterprises Covered by the FLSA

29 U.S.C. 203 (s)(1)(A)(i) and (ii) provides that:

> (i)"Enterprise engaged in commerce or in the production of goods for commerce means an enterprise that has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person: **and** [emphasis added] (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.00

The plaintiffs filed their Complaint on September 13, 2018 (Exhibit A). The Statute of Limitations for the FLSA is two years; therefore, relevant period for the FLSA claims is September 13, 2016 through each of the store sales in 2018 (March 18, 2018 for the Commack store and July 14, 2018 for the Jericho store). Mr. Tam testified that in 2016 the Commack store made $165,133.00 (Transcript Page 104, Lines 1-3) and the Jericho store made $153,606.00 (Transcript Page 106, Lines 13-17). He further testified that in 2017 & 2018 the Commack store, which closed in March 2018, made $62,786.00 (Transcript Page 104, Lines 9-14) and the Jericho

store, which closed in July 2018, made $116,369.00 (Transcript Page 106, Lines 20-25). This testimony was corroborated in three ways. First, the tax returns (Exhibits B 1 & 2 for the Commack store and C 1 & 2 for the Jericho store) are consistent with the testimony of Mr. Tam. The second form of corroboration is the uncontradicted testimony of Mr. Tam regarding the amount of mix he purchased from the Carvel Corporation, a maximum of 3400 gallons of mix for the Commack store (Transcript Pages 109-110, Lines 22-3) and a maximum of 2200 gallons of mix for the Jericho store (Transcript Page 108, Lines 21-25). Mr. Tam testified that the expected estimated return per gallon was $60 -$70 each. Using the top number of $70, in its best year the Commack store would only be expected to make $238,000.00 (3400 x $70) and the Jericho would only be expected to make $154,000.00 (2200x$70). Even when you combine the sales from both stores, it would not exceed $500,000.00. Lastly, the third form of corroboration is the price at which Mr. Tam sold both of the stores, the Commack store for $190,000.00 and the Jericho store for $50,000.00 (Transcript Page 96, Lines 10-11). Businesses are generally valued at 2 – 5 times their yearly revenue. Businesses that generate in excess of $500,000.00 in yearly revenue would not be sold for a combined $240,000.00.

The best evidence that the defendant businesses did not earn in excess of $500,000.00 came from the testimony of the plaintiffs themselves. Plaintiff Luk testified that in the summer months, the Commack store made $800-$1000 per day on Monday through Thursday (Transcript Pages 10 - 11, Lines 20 - 1), $1000 - $1200 on Fridays (Transcript Page 26, Line 18) and $1200 - $1600 on the weekends (Transcript Page 26, Line 18). Plaintiff Luk further testified that the store would earn one third less during the winter months (Transcript Page 11, Lines 7-8). Plaintiff Dai defined the summer as June, July and August (Transcript Page 68, Line 10). Using the income numbers provided by plaintiff Luk, i.e., income of $800-$1000 per day from Monday to

Thursday (between $3200-$4000), $1000-$1200 on Friday and $1200-$1600 per day on Saturday and Sunday ($2400-$3200), the weekly income for the Commack store for the summer months would be between $6600-$8400. Multiplying these numbers by the 12 weeks of the summer months as defined by plaintiff Dai equals a total income of between **$79,200 - $100,800** for the summer at the Commack store. According to plaintiff Luk the store would make 1/3rd less during the remaining 9 months of the year. When you multiply the weekly income for the summer months by 66.66%, the weekly income for the remaining weeks is between $4400-$5599.44 per week. Multiply the weekly income by 4 and you get between $17,600-$22,379.76 per month. Multiply the monthly income by the remaining 9 months of the year and you get between **$158,400-$201,579.84** as income for the winter months or a total income of between **$237,600-$302,379.84** as a yearly income for the Commack store. Since the Commack store was sold in March 2018, the maximum income for that store in 2018 would be 25% or between $59,400-$75,579.96. Clearly, the Commack store could not be considered an enterprise as defined by the FLSA in 2018.

Plaintiff Luk also testified regarding the income of the Jericho store (Transcript Page 26, Lines 20-24). She estimated that in the summer months the store would make between $600-$800 Mondays through Thursdays and $800-$1000 on Fridays and $1000-$1200 on Saturdays and Sundays. Based on these numbers the Jericho store would make between $4200-$6600 per week in the summer, which using the same calculations as above, translates to between **$50,400-$79,200** for the summer season as defined by plaintiff Dai. Plaintiff Luk further testified that during the winter months the store would make one third less (Transcript Page 26, Lines 23-24). Multiplying the weekly income for the summer by 66.66% provides a weekly income in the winter months of between $2800-$4400. This equals between $11,200-$17,600 per month and

between **$100,800-$158,400** total income in the winter. According to this testimony, the maximum yearly income for the Jericho store would be **$151,200-$237,600**. Since the Commack store was sold in July 2018, the maximum income for that store in 2018 would be 50% or between $75,600-$118,800. Once again, the Jericho store would not be considered an enterprise as defined by the FLSA in 2018, nor would the combined income of both stores in 2018 bring them under the purview of the FLSA.

The best-case scenario for the plaintiffs, assuming the Court disregards the inconsistencies in their testimony, is that the combined income of each of these separate corporations for 2016 & 2017 was between $388,800 and $539,980 (the lower end of the income number being more consistent with the tax returns, the amount of mix purchased, the testimony of Mr. Tam and the sale price of the stores); however, it is clear from the plaintiffs' testimony that these estimates are high. Both plaintiffs testified that there were days when only one or two customers came into the store (Transcript Page 38, Lines 9-10 (Luk) and (Transcript Page 70, Lines 17-18 (Dai)). In addition, plaintiff Luk testified that there were days where the Commack store only made $100-$200 in a day (Transcript Page 38, Lines 20-21). Based on this evidence, particularly when the lower end of the range alleged by the plaintiffs is over $110,000.00 below the required threshold, the plaintiffs have failed to prove that the defendants are an enterprise covered by the FLSA necessitating a verdict for Counts I and III in favor of the defendants.

Even assuming that the Court determines that the income of these two separate corporations are properly combined and that the income exceeds $500,000, that determination should not apply to plaintiff Dai. There was no testimony that plaintiff Dai ever worked anywhere but the Jericho store owned by SHK LI Inc. Even with the exaggerated income estimates proffered by the plaintiffs, it is clear that this store would not be considered an

enterprise under the FLSA. The mere fact that the individual defendant (Mr. Tam) owned shares in or operated other businesses that plaintiff Dai had no relationship with should not allow plaintiff Dai to invoke the protections of the FLSA, meaning the Court should issue a verdict in favor of the defendants with regard to the federal claims alleged by plaintiff Dai.

### B.      There is No Evidence That the Defendants Violated the Law

Plaintiff Luk testified at trial that she had no idea how money she received for her work since she took the money she was handed, put it in her pocket and never counted it (Transcript Page 41, Lines 13-24). This testimony is belied by the evidence that plaintiff Luk demanded $12 per hour in January 2016 (Transcript Page 124, Lines 8-13). Her inability to testify regarding how much she was paid prevents her from being able to sustain any of the remaining allegations in her complaint, which, according to her attorney's re-direct examination, she could not have understood since no one at the law firm spoke Cantonese, plaintiff Luk's primary language (Transcript Page 52, Lines 2-7). The inconsistencies in her trial testimony, the non-specific nature of the testimony and the contradictions between the Complaint and the testimony render plaintiff Luk's testimony incredible and not worthy of belief. The Court should issue a verdict in favor of the defendants with regard to every claim alleged by plaintiff Luk.

Plaintiff Dai testified that she worked 10 hours a day (Transcript Page 67, Lines 13-14), five days a week and that she received $500 per week (Transcript Page 67, Lines 15-17). On direct examination she testified that she sometimes received $520 - $530 per week to account for tips (Transcript Page 63, Lines 14-15). Simple math reveals that at $500 per week for a fifty-hour week, plaintiff Dai made $10 and hour. Based on the plaintiff's testimony, she would not be entitled to "spread of hours" pay since she did not work more than 10 hours in a day. Assuming that defendant Dai was entitled to overtime for two hours a day, she would have been entitled to

pay for 11 hours a day. Based on her testimony, the hourly wage she received, plus the $200 a year bonus she received each year (Transcript Page 68, Line 15) would more than cover the overtime payments for the majority of her employment with the defendants. It must be noted; however, that Mr. Tam credibly testified that he paid plaintiff Dai $105 per day in 2017 and $110 per day in 2018 (Transcript Page 136, Lines 12-13). Further evidence that plaintiff Dai was properly paid throughout her tenure with the defendants.

The testimony also made clear that the plaintiffs were tipped employees (Transcript Page 44, Line 25), meaning that the minimum wage they were entitled to was even less. Conveniently, neither plaintiff was able to testify regarding the amount of tips they received (Transcript Page 45, Lines 12-15 (Luk) (Transcript Page 70, Lines 5-10 (Dai)).

Once again, the plaintiffs were not able to establish that the defendants violated any of the allegations related to the minimum wage, overtime and "spread of hours;" therefore, the Court should issue a verdict in favor of the defendants on Counts II, IV & V of the Complaint.

Corporate defendants admit that they did not provide plaintiffs with the written notices required under Section 195 of the NYLL; however, section 198 1-d permits the Court to forgive this violation when the plaintiff was, in fact, paid properly. There is no credible evidence that plaintiff Luk was not paid properly and all evidence at trial established that plaintiff Dai was paid in excess of what was required by law. The evidence establishes that the defendants properly paid the plaintiffs, as such, defendants request that the Court forgive the violations alleged in Counts VI & VII of the Complaint.

Defendants' Counterclaim

As argued above, there is clear evidence that the defendants properly paid the plaintiffs during their employment, which begs the question; "why were these unsubstantiated claims

brought in the first place?" Despite testimony to the contrary by plaintiff Luk (Transcript Page 50, Lines 1-12), it is clear that the plaintiffs were upset that the defendants sold their businesses resulting in the loss of their jobs without severance pay. Plaintiff Luk texted Mr. Tam asking about severance pay and was surprised that he denied her (Exhibit D). It is clear that the plaintiffs' anger, not actual violations of the law, is what improperly motivated this suit. The plaintiffs worked for the defendants for years. Plaintiff Luk described the relationship as familial (Transcript Page 50, Lines 2-4) and said that her son referred to Mr. Tam as "uncle" (Transcript Page 49, Lines 20-24). Mr. Tam testified that he knew plaintiff Luk through friends before he hired her (Transcript Page 96, Lines 10-11) and that the relationships he had with the plaintiffs extended into their personal lives, doing many favors for the plaintiffs, for example, lending plaintiff Luk his car (Transcript Page 117, Line 16); allowing plaintiff Luk to store food in his store freezer when her freezer broke (Transcript Page 118, Line 21); rehiring plaintiff Luk several times (Transcript Page 120, Lines 10-17 & Page 121, Lines 20-24); picking plaintiff Dai up when her car broke down at 10 p.m. and having her car towed to his friend's garage (Transcript Page 125, Lines 1-9); and driving plaintiff Dai to and from work (plaintiff Dai lived in Flushing) and/or arranging for a neighboring business to do the same (Transcript Pages 126-127, Lines 10-6). Mr. Tam further testified that he had no further contact with either of the plaintiffs after he sold the stores (Transcript Page 141, Lines 18-23). Why else would these long-term relationships breakdown if the plaintiffs were not angry with Mr. Tam?

Additionally, plaintiffs did not respond to the Counter Claim, thereby admitting the allegations, FRCP 8(b)(6).

Defendants request that the Court find in their favor on the Counter Claim and direct plaintiffs to pay attorney fees and other relief that the Court deems appropriate.

Dated: New York, New York
April 23, 2020

                Respectfully submitted,
                Hines & Associates
                Attorneys for Defendants
                450 Seventh Avenue: Suite 305
                New York, New York 10123
                (212) 268 8668

                _____/s/_____
                Clifford Mulqueen
                clifford.mulqueen@gmail.com